UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

JOHN DIAMOND,

        Plaintiff,

vs.                                        Case No.  3:12-cv-983-J-34MCR

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

_____/

## REPORT AND RECOMMENDATION[1]

This cause is before the Court on Plaintiff's appeal of an administrative decision

denying his application for Supplemental Security Income.  The Court has reviewed the

record, the briefs, and the applicable law.  For the reasons set forth herein, it is

**RECOMMENDED** that the Commissioner's decision be **REVERSED** and **REMANDED**.

## I.  PROCEDURAL HISTORY

Plaintiff protectively filed an application for Supplemental Security Income benefits

on March 20, 2009, alleging disability beginning January 18, 2009.  (Tr. 110-112, 135).

The Social Security Administration denied Plaintiff's application initially on June 16, 2009,

and again upon reconsideration on October 29, 2009.  (TR. 46 - 54).  On January 14, 2010,

Plaintiff requested a hearing before an administrative law judge ("ALJ") and his case was

heard November 3, 2010.  (Tr. 30-45, 56).  The ALJ issued a decision finding Plaintiff not

_____

[1] Any party may file and serve specific, written objections hereto within FOURTEEN (14)
DAYS after service of this Report and Recommendation.  Failure to do so shall bar the party
from a de novo determination by a district judge of an issue covered herein and from attacking
factual findings on appeal.  See 28 U.S.C. §636(b)(1); Rule 72(b), Fed. R. Civ. P.; and Local
Rule 6.02(a), United States District Court for the Middle District of Florida.

disabled on December 14, 2010.  (Tr. 12-24).  Plaintiff requested review by the Appeals

Council, which was denied on July 23, 2012.  (Tr. 1-4).  Accordingly, the ALJ's December

14, 2010 decision is the final decision of the Commissioner.  Plaintiff filed his Complaint in

the United States District Court on September 4, 2012.  (Doc. 1).

## II.     NATURE OF DISABILITY CLAIM

### A.     Basis of Claimed Disability

Plaintiff claims to have been disabled since January 18, 2009 due to an assault in

which Plaintiff suffered a punctured lung, a punctured kidney, injury to his spleen leading to

its surgical removal, and chest and back disfigurement.  (Tr. 128).

### B.     Summary of Evidence Before the ALJ

Plaintiff was born November 15, 1965, and was 45 years of age on the date the

ALJ's decision was issued.  (Tr. 24, 135).  Plaintiff had a highschool education and past

relevant work experience as a landscape laborer, construction worker, cashier, and food

sales clerk.  (Tr. 39).  The following provides a brief summary of Plaintiff's medical history.

Because Plaintiff's medical record is extensive, the Court limits its summary to the evidence

upon which the parties rely in their memoranda.

On May 13, 2009, Plaintiff reported to Cora Rehabilitation Clinics in Palm Coast,

Florida where he was examined by Dr. Jaime Cory, D.O. and Certified Physician's

Assistant Gene Kinally.  (Tr. 355-362).  During the exam, Plaintiff reported he experienced

pain in his neck, shoulders, and back following treatment for the injuries suffered during his

assault in January of 2009.  Id.  Physical examination showed limitations in Plaintiff's range

of motion in his shoulders, cervical spine, and lumbar spine.  Id.  The evaluation indicated

Plaintiff would benefit from physical therapy aimed at squatting, kneeling, bending,

stooping, lifting, carrying, stair climbing, sitting, standing, walking, overhead activities, self

care, and home care.  (Tr. 358).  Additional limitations included abnormal posture,

abnormal gait, tenderness to palpitation, and deficits in his strength.  Id.  Plaintiff's plan of

care provided he would be seen two times per week for three weeks (Tr. 363), however,

the record does not reflect additional visits.

On June 15, 2009, Single Decision Maker ("SDM") Danny Hood prepared a Physical

RFC Assessment based on Plaintiff's medical evidence.  (Tr. 385-91).  Mr. Hood indicated

Plaintiff was able to lift 20 pounds occasionally, 10 pounds frequently, stand or walk for six

hours in an eight hour work day, sit for six hours in an eight hour work day, and push or pull

hand or foot controls without limitation.  (Tr. 385).  Mr. Hood also provided Plaintiff could

frequently climb stairs or ramps, balance, stoop, kneel, crouch, and crawl.  (Tr. 386).  The

assessment offered no manipulative, visual, or communicative limitations.  (Tr. 387-88).

Mr. Hood indicated Plaintiff should avoid environmental hazards such as machinery and

heights.  (Tr. 388).

On October 9, 2009, Plaintiff was examined by state agency consultative examiner

Dr. David Carpenter, M.D.  (Tr. 393-398).  Dr. Carpenter reported Plaintiff was alert and

oriented, in no apparent distress, answered questions appropriately, followed directions

without difficulty, and got on and off the exam table without assistance.  (Tr. 394).

Examination of Plaintiff's upper extremities revealed normal strength in all areas except for

a slight deficit in his shoulders.  Id.  Plaintiff showed no sensory deficits, point tenderness,

joint deformities, or joint inflammation.  Id.  Plaintiff's range of motion in his arms was within

normal limits, except for some limitation in his shoulders.  (Tr. 394, 96).  Examination of

Plaintiff's back and spine showed no paravertebral muscle spasms and no cervical,

thoracic, lumbar, or sacral point tenderness. (Tr. 394). Plaintiff exhibited a decreased range of motion in his cervical and lumbar spine. (Tr. 396). Dr. Carpenter opined Plaintiff was limited in his ability to perform work related activities involving overhead lifting or strenuous activity; however, Plaintiff was capable of sedentary and light physical activities. (Tr. 395).

On October 27, 2009, state agency medical consultant, Dr. David Guttman, M.D., prepared a second Physical RFC Assessment based on Plaintiff's medical evidence. (Tr. 401-406). Dr. Guttman found Plaintiff was able to lift 20 pounds occasionally, 10 pounds frequently, stand or walk for six hours in an eight hour work day, sit for six hours in an eight hour work day, and push or pull hand and foot controls without limitation. (Tr. 401). The Assessment indicated Plaintiff could frequently climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. (Tr. 402). Dr. Guttman provided Plaintiff was limited to no more than frequent reaching due to impairments in his shoulder. (Tr. 403).

On January 20, 2010, Plaintiff was examined by Dr. Robert Dehgan, M.D., P.A. (Tr. 490-92). Examination of Plaintiff's shoulders showed they were symmetrical and stable without redness, swelling, or deformity. (Tr. 491). Plaintiff's range of motion in his shoulders was within normal limits. Id. Examination of Plaintiff's cervical spine revealed normal alignment without deformities and a normal range of motion. Id. Examination of Plaintiff's lumbar spine revealed tenderness and guarding with a decreased range of motion. Id. Dr. Dehgan's impressions included chronic back pain, lumbar radiculopathy, and myofascial pain. (Tr. 490). Dr. Dehgan indicated Plaintiff should manage his pain with exercise and hot and cold packs. Id. Plaintiff was also given a prescription for Tramadol, Trazodone, Mobic, and Robaxin. Id.

On April 30, 2010, Plaintiff returned to Dr. Dehgan's office for a follow-up evaluation. (Tr. 493). Dr. Deghan reported Plaintiff's shoulders and pelvis were level and his gait was normal. Id. Examination of Plaintiff's upper limbs, cervical spine, and lumbar spine were all normal. Id. Plaintiff exhibited tenderness in his lumbar spine with 70 degrees of flexion. Id. Plaintiff stood on his heels and toes with discomfort. Id. An MRI of Plaintiff's spine revealed mild degenerative changes in his lumbar spine with no gross abnormalities. Id. Dr. Dehgan discussed the findings with Plaintiff and indicated urine analysis showed no presence of drugs in his system. Id. Dr. Deghan inquired whether Plaintiff was taking the medications prescribed to him for pain management. Id. Plaintiff stated he required a prescription for OxyContin. Id. Dr. Dehgan noted Plaintiff had a prescription for OxyContin from a recent examination in Palm Coast and again indicated Plaintiff's urine analysis suggested he was not taking it as prescribed. Id. Plaintiff was given a prescription for Mobic, Lorazepam, and Darvocet for pain management and encouraged to perform stretching and home exercise to improve flexibility. Id.

On September 4, 2010, Plaintiff underwent a psychiatric evaluation conducted by Dr. Gary Frick, M.D. of Coastal Mental Health Center. (Tr. 499-502). Plaintiff reported a history of depression, alcohol use ("ETOH"), and post-traumatic stress disorder ("PTSD"). (Tr. 499). Plaintiff also reported he suffered from anxiety, which was under control, as well as flashbacks and nightmares of his assault. Id. Dr. Frick reported Plaintiff denied feelings of depression, hopelessness, or worthlessness at the time of the evaluation. Id. During a mental status examination, Plaintiff was calm and exhibited good eye contact. (Tr. 500). Plaintiff's speech was described as clear, coherent, and normal in pace. Id. Plaintiff's mood and affect were characterized as slightly anxious. Id. Plaintiff's attention,

concentration, memory, abstraction, insight, judgment, intellectual functioning, and impulse control were all described as fair. (Tr. 501). Dr. Frick assigned Plaintiff a GAF score of 50 and indicated Plaintiff should return for a follow-up evaluation in one month. Id. Plaintiff was given a prescription for Celebra and Ativan. Id.

On September 29, 2010, Plaintiff treated with Dr. Steven Bower, M.D., for an examination of his status post splenectomy. (Tr. 496-97). During examination, Plaintiff was awake, alert, oriented, and in no acute distress. (Tr. 496). Plaintiff had a ventral hernia with a facial defect of 4-5 cm and reducible intestines. (Tr. 497). Dr. Bower found Plaintiff could benefit from laproscopic hernia repair or internal drainage. Id. However, Dr. Bower expressed concern regarding a pseudo-cyst. Id. Consequently, Dr. Bower recommended watchful management for six months to determine how the cyst changed during that period. Id. If the cyst remained the same size or became smaller, Dr. Bower would proceed with the hernia repair. Id. If the cyst became larger, internal drainage would be more appropriate. Id.

### C.     Summary of the ALJ's Decision

A claimant is entitled to disability benefits if he is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or last continuously for a period of at least twelve months. 42 U.S.C. §§ 416(i)(1); 423(d)(1)(A); 20 C.F.R. § 416.905. The ALJ must follow a five step sequential process in evaluating a claim of disability. 20 C.F.R. § 416.920(a)(4). First, if a claimant is performing substantial gainful activity, he is not disabled. Id. Second, if a claimant does not have any impairment or combination of impairments which significantly limits his ability to do basic work activities, he is not disabled. Id. Third, if the

claimant's impairments meet or equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant is considered disabled without regard to his age, education, or work experience. Id. Fourth, if the claimant's impairments do not meet or equal any of the listed impairments, they must prevent him from performing any past relevant work. Id. Fifth, if the claimant's impairments (considering his age, education, work experience, and RFC) prevent him from doing other work that exists in the national economy, he is disabled. Id. Claimants bear the burden of persuasion through the fourth step, but the burden shifts to the Commissioner at the fifth step. Bowen v. Yuckert, 482 U.S. 137, 146, 107 S. Ct. 2287 n.5 (1987).

In the instant case, at the first step, the ALJ found Plaintiff had not engaged in substantial gainful activity since the date of his application for disability benefits. (Tr. 14). At the second step, the ALJ found Plaintiff suffered from the following severe impairments: "status post splenectomy, ventral abdominal hernia without evidence of obstruction or incarceration, degenerative disc disease of [the] lumbar spine with radiculopathy and anxiety." Id. At the third step, the ALJ found Plaintiff did not have an impairment, or combination of impairments, which met or equaled those listed in 20 C.F.R. 404, Subpart P, Appendix 1. Id. Accordingly, the ALJ assessed Plaintiff's RFC and provided:

> [T]he undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) as he is able to sit up to 7 hours per day but would need to get up once an hour for 1-2 minutes. He is able to stand/walk up to 4 hours in an 8-hour day but not for more than 30 minutes at one time. He is able to lift up to 20 pounds occasionally and ten pounds frequently. He is precluded from crawling, or climbing ladders, ropes or scaffolds. He is limited to bending, stooping, crouching, kneeling, climbing stairs or reaching above shoulder level on an a occasional basis. He is precluded from working at unprotected heights, moving or hazardous machinery or driving motorized vehicles. He is

limited to no more than brief, superficial contact with the general
public.  He is also limited to low to moderate stress work.

(Tr. 15-16).  At the fourth step, based on the testimony of a vocational expert ("VE"), the

ALJ found Plaintiff was unable to perform his past relevant work due to his exertional and

non-exertional limitations.  (Tr. 23).  At the fifth step, the ALJ again relied on the VE's

testimony and found Plaintiff was able to perform the duties of an office helper, addresser,

and document preparer.  (Tr. 23-24).  Consequently, the ALJ found Plaintiff was not

disabled within the meaning of the Social Security Act.  (Tr. 24).

## III.  ANALYSIS

### A.    The Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied

the correct legal standards, McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988),

and whether the findings are supported by substantial evidence.  Richardson v. Perales,

402 U.S. 389, 390, 91 S. Ct. 1420, 1422 (1971).  The Commissioner's findings of fact are

conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence

must do more than create a mere suspicion of the existence of a fact, and must include

relevant evidence which a reasonable person would accept as adequate to support the

conclusion.  Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v.

Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district

court will affirm, even if the reviewer would have reached a contrary result as finder of fact,

and even if the reviewer finds the evidence preponderates against the Commissioner's

decision.  Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991); Barnes v. Sullivan,

932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a

whole, taking into account evidence favorable as well as unfavorable to the decision.

Foote, 67 F.3d at 1560.

### B.     Issues on Appeal

Plaintiff raises two issues on appeal. (Doc. 22, pp. 12-22). First, Plaintiff argues the ALJ failed to apply the correct legal standards in assigning weight to the medical evidence of record. (Doc. 17, pp. 9-14). Second, Plaintiff asserts the ALJ failed to apply the correct legal standards in determining the credibility of Plaintiff's subjective complaints of pain. (Doc. 17, pp. 14-18). As the second issue is dispositive, the Court will begin its analysis with a discussion of that issue.

### 1.     Whether the ALJ failed to apply the correct legal standards in evaluating Plaintiff's subjective complaints of pain.

Plaintiff argues the ALJ erred in his consideration of Plaintiff's subjective complaints of pain. (Doc. 17, pp. 14-18). Specifically, Plaintiff contends the ALJ improperly discounted his subjective complaints and, contrary to the requirements of SSR 96-7p, based his decision solely on objective medical evidence.[2] (Doc. 17, pp.14-17). Plaintiff further contends the ALJ erred in failing to discuss a pain questionnaire filled out by Plaintiff's father. (Doc. 17, pp. 17-18). The Commissioner responds that the ALJ properly discounted Plaintiff's subjective complaints of pain and notes that the questionnaire completed by Plaintiff's father largely corroborated Plaintiff's testimony which the ALJ explicitly rejected. Consequently, the Commissioner argues the ALJ's rejection of the

---

[2] SSR 96-7p provides, in relevant part, "[b]ecause symptoms, such as pain, sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, the adjudicator must carefully consider the individual's statements about symptoms with the rest of the relevant evidence in the case record in reaching a conclusion about the credibility of the individual's statements if a disability determination or decision that is fully favorable to the individual cannot be made solely on the basis of objective medical evidence." SSR 96-7P 1996 WL 374186 (S.S.A July 2, 1996).

questionnaire was implicit in the rejection of Plaintiff's testimony. (Doc. 21, pp. 18-20). The Court agrees that the statements in Plaintiff's father's pain questionnaire repeat those in Plaintiff's own pain questionnaire and therefore, it was not necessary for the ALJ to explicitly state what, if any, weight he gave the questionnaire. However, as the ALJ did not provide specific reasons based on substantial evidence in rejecting Plaintiff's testimony, the Court agrees with Plaintiff's claim of error.

An ALJ must consider a claimant's complaints of pain and other subjective symptoms, and determine the extent to which they can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 416.929(a). In making this determination, the ALJ must apply the Eleventh Circuit's three-part "pain standard."

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising form that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

Foote, 67 F.3d at 1560 (quoting Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991)). If the ALJ discounts the claimant's subjective complaints, the ALJ must articulate specific and adequate reasons based on substantial evidence for doing so. Jones v. Dep't of Health & Human Servs., 941 F.2d 1529, 1532 (11th Cir. 1991). A reviewing court will not disturb a clearly articulated credibility finding supported by substantial evidence. Conner v. Astrue, 415 F. App'x 992, 996 (11th Cir. 2011) (citing Hale v. Bowen, 831 F.2d 1007, 1012 (11th Cir. 1987)).

In the instant case, the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause his alleged symptoms, however, the ALJ discounted his complaints to the extent they were inconsistent with the RFC assessment.

(Tr. 17).  Because the ALJ did not fully credit Plaintiff's testimony, he was required to provide specific reasons supported by substantial evidence to explain his decision. The Commissioner argues the ALJ's decision to not fully credit Plaintiff's testimony was supported by the record.  For example, the Commissioner notes Plaintiff's responses to his Function Report in 2010 indicated he could walk his dog, shave, dress independently with the exception of putting on socks and shoes, use the toilet independently, vacuum, ride in a car, and shop for groceries.  (Tr. 246-264). The Commissioner argues this report conflicts with Plaintiff's statements in documents from 2009 in which Plaintiff alleged he could not sit, stand, walk, pick up or grasp utensils, dress himself, drive, turn his neck, or toilet himself. (Doc. 21, p. 6).  However, as the Plaintiff argues, the Court cannot accept such justifications as the basis for the ALJ's decision because the ALJ did not mention the report in his decision as a reason for discounting Plaintiff's testimony.  See Owens v. Heckler, 748 F.2d 1511, 1516 (11th Cir. 1984) (declining to affirm the Commissioner's decision "simply because some rationale might have supported the ALJ's conclusion."); Lowe v. Astrue, 1:10-cv-202, 2011 WL 2694670 (N.D. Fla. July 12, 2011) (explaining the courts may not substitute *post hoc* rationales for the reasoning supplied by the ALJ).

The Court discerns three justifications provided in the ALJ's decision to support his discrediting of Plaintiff's subjective complaints of pain.  First, the ALJ noted there were significant gaps in Plaintiff's treatment between May of 2009 and the end of 2009.  (Tr. 22). Second, the ALJ noted Dr. Dehgan's indications that Plaintiff's MRI showed only benign abnormalities in his spine and that Plaintiff had not taken the OxyContin prescribed to him for pain management.  Id.  Third, the ALJ stated Plaintiff's most recent examination with Dr. Bower showed Plaintiff's status post-splenectomy warranted no more than simple

monitoring.  Id.  The Court finds these justifications do not constitute substantial evidence in support of the ALJ's decision to not fully credit Plaintiff's testimony.

The ALJ discounted Plaintiff's testimony, in part, because Dr. Bower recommended simple monitoring of Plaintiff's condition for a period of six months in his examination of Plaintiff's status post splenectomy.  The Eleventh Circuit has stated "[a] doctor's conservative medical treatment for a particular condition tends to negate a claim of disability."  Sheldon v. Astrue, 268 F. App'x 871, 872 (11th Cir. 2008) (citing Wolfe v. Chater, 86 F.3d 1072, 1078 (11th Cir. 1996)).  Thus, a conservative treatment for Plaintiff's pain would support a decision to not fully credit his subjective complaints of pain.  However, the entirety of Dr. Bower's statements provided Plaintiff could benefit from either laproscopic incisional hernia repair or internal drainage.  (Tr. 496).  The sixth month period was only recommended in order to determine how Plaintiff's pseudo-cyst changed during that time.  Id.  Dr. Bower indicated if the cyst became larger, internal drainage was appropriate.  Id.  If the cyst remained the same size or became smaller, incisional hernia repair would be more appropriate.  Id.  The ALJ's observation that Dr. Bower recommended watchful management suggests a more conservative course of treatment than was actually prescribed.  Accordingly, Dr. Bower's recommendation does not offer substantial evidence in support of the ALJ's decision to not fully credit Plaintiff's testimony.

The ALJ also discounted Plaintiff's testimony based on a gap in treatment from April 2009 to the end of 2009 and Dr. Dehgan's indication that Plaintiff was not taking the OxyContin prescribed to him for pain management.  However, it is generally improper for an ALJ to base a credibility assessment on such observations without first giving the claimant an opportunity to explain his circumstances.  As SSR 96-7p provides:

> [T]he individual's statements may be less credible if the level or
> frequency of treatment is inconsistent with the level of
> complaints, or if the medical reports or records show that the
> individual is not following the treatment as prescribed and there
> are no good reasons for this failure. **However, the adjudicator
> must not draw any inferences about an individual's
> symptoms and their functional effects from a failure to seek
> or pursue regular medical treatment without first
> considering any explanations that the individual may
> provide, or other information in the case record, that may
> explain infrequent or irregular medical visits or failure to
> seek medical treatment.** The adjudicator may need to
> recontact the individual or question the individual at the
> administrative proceeding in order to determine whether there
> are good reasons the individual does not seek medical
> treatment or does not pursue treatment in a consistent manner.
> The explanations provided by the individual may provide insight
> into the individual's credibility.

SSR 96-7p (emphasis added). The regulation further provides examples of instances in which the claimant's failure to seek regular medical treatment or take medications as prescribed could be explained without undermining the claimant's credibility. Id. In this case, the ALJ did not ask Plaintiff to explain the regularity of his medical treatment in 2009 or his supposed failure to take the medication prescribed to him. Plaintiff's failure to obtain regular medical attention may be explained, in part, by Dr. Bower's indication that Shands Hospital in Gainesville, who treated Plaintiff in 2009, discontinued Plaintiff's treatment due to insurance difficulties. (Tr. 496). In the absence of any opportunity for Plaintiff to explain his circumstances, it was not appropriate to use these observations as the sole basis for not fully crediting Plaintiff's testimony. Dawkins v. Bowen, 848 F.2d 1211, 1213 (11th Cir. 1988); Fullington v. Astrue, 1:12-cv-344, 2013 WL 2405299, at *8 (M.D. Ala. May 31, 2013). Accordingly, the ALJ's decision to not fully credit Plaintiff's testimony was not supported by substantial evidence.

## 2. Whether the ALJ erred in assigning weight to the medical evidence or record

Next, Plaintiff argues the ALJ failed to apply the correct legal standards in assigning weight to the medical evidence of record.  (Doc. 17, pp. 9-14).  Plaintiff asserts the ALJ erred in giving significant weight to the opinions of non-examining state agency consultants, one of whom was not an acceptable medical source, and failing to state the weight accorded the several opinions of examining medical sources.  (Doc. 17, pp. 9-11).  Specifically, Plaintiff directs the Court to the evaluations conducted by Drs. Carpenter, Dehgan, and Cory.  (Doc. 17, pp. 12-14).  Plaintiff contends these evaluations assessed limitations in Plaintiff's range of motion, as well as postural and manipulative difficulties, which the ALJ did not consider or include in determining Plaintiff's RFC.  (Doc. 17, pp. 12-13).  Additionally, Plaintiff argues the ALJ failed to assign weight to the psychiatric evaluation conducted by Dr. Frick and failed to properly account for the severity of Plaintiff's mental impairments.  (Doc. 17, pp. 11-12).

An ALJ is required to consider all evidence of record in making a disability determination.  20 C.F.R. § 416.920.  In addition, the ALJ is required to state with specificity the weight given to different medical opinions and the reasons therefore.  Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir. 1987).  The weight an ALJ must give different medical opinions varies according to the relationship between the medical professional and the claimant.  20 C.F.R. § 416.927; SSR 96–6p.  Generally, the opinions of non-examining sources are entitled to little weight and, standing alone, do not constitute substantial evidence.  Lamb v. Bowen, 847 F.2d 698, 703 (11th Cir. 1988).  "Where, however, a non-examining physician's assessment does not contradict the examining physician's report, the ALJ does not err in relying on the non-examining physician's report."  Poellnitz v.

Astrue, 349 F. App'x 500, 502 (11th Cir. 2009) (citing Edwards, 937 F.2d at 584–85).  In

certain circumstances, the ALJ's failure to strictly comply with these requirements may be

deemed harmless error.  See Caldwell v. Barnhart, 261 F. App'x 188, 190 (11th Cir. 2008)

("An ALJ's failure to state with particularity the weight given different medical opinions is

reversible error.  When, however, an incorrect application of the regulations results in

harmless error because the correct application would not contradict the ALJ's ultimate

findings, the ALJ's decision will stand.") (citations omitted).

     In the instant case, Plaintiff argues the ALJ erred in giving significant weight to the

opinions of the non-examining state agency consultants, one of whom was not a physician,

in determining Plaintiff's RFC.  (Doc. 17, pp. 9-11).  With respect to the opinion of SDM

Hood, the Commissioner responds by arguing the ALJ did not give SDM Hood's RFC

assessment significant weight as he did not discuss this document in his decision and only

indirectly referred to SDM Hood as a physician.  (Doc. 21, pp. 12).  The Commissioner

further argues the ALJ appropriately weighed the medical evidence of record and the ALJ's

decision is supported by substantial evidence.  (Doc. 22, pp. 12-20).  The Court finds the

ALJ committed no more than harmless error by indirectly referring to SDM Hood as a

physician.  While Plaintiff is correct that the opinion of an SDM is not considered medical

evidence and is entitled to no weight, as the Commissioner notes, the ALJ did not refer to

the RFC assessment of SDM Hood in his discussion of the medical evidence.  Indeed, this

document is one of only two exhibits the ALJ did not discuss in his summary of the medical

evidence.  The Court agrees this provides a strong indication that the ALJ was aware of Mr.

Hood's non-medical status and did not give his assessment great weight despite his use of

the plural form in referring to state agency reviewing "physicians."  Additionally, the findings

of Mr. Hood mirrored those of Dr. Carpenter and Dr. Guttman, and the ALJ imposed greater

restrictions than are present in any of these source's opinions.  Accordingly, any reference to Mr. Hood's RFC assessment was no more than harmless error.  See Cooper v. Comm'r of Soc. Sec., 521 F.App'x 803 (11th Cir. June 6, 2013) (ALJ's mistaken reference to an SDM as a doctor was harmless where the ALJ also considered the findings of the plaintiff's treating source and a non-examining physician and the SDM's findings were no more than cumulative of the other evidence).

With regard to Dr. Guttman's RFC, Plaintiff contends the ALJ erred in giving significant weight to this assessment because he was a non-examining state agency consultant.  (Doc. 22, pp. 9-11).  However, an ALJ does not err in relying on the opinion of a non-examining medical source if the opinion is consistent with the opinions of examining physicians.  Poellnitz, 349 F. App'x at 502.  Accordingly, the Court must consider whether Dr. Guttman's opinion contradicts the opinions of Plaintiff's other medical sources.  After review of the medical evidence cited by Plaintiff, the Court finds the ALJ did not err in giving significant weight to the opinion of state agency consultant Dr. Guttman because his findings were consistent with those of Drs. Carpenter, Dehgan, and Cory.

The Court first considers the findings of consultative examiner Dr. Carpenter.  (Tr. 393-99).  Dr. Carpenter's findings are decidedly consistent with those of state agency consultant Dr. Guttman.  Indeed, in explaining his findings, Dr. Guttman cited almost exclusively to Dr. Carpenter's examination.  (Tr. 401-03).  For example, because Dr. Carpenter assessed limitations in Plaintiff's range of motion in his shoulders, Dr. Guttman included a restriction to no more than frequent reaching in all directions.  (Tr. 403). Notably, the ALJ assessed greater restrictions in this area than either Dr. Carpenter or Dr. Guttman by limiting Plaintiff to no more than occasional reaching.  (Tr. 15-16).  Based on

Dr. Carpenter's findings, Dr. Guttman assessed Plaintiff's RFC as consistent with the ability to perform the duties of light work.[3] (Tr. 401). This conclusion is well supported by Dr. Carpenter's opinion as Dr. Carpenter explicitly stated Plaintiff was able to perform light and sedentary physical activity. (Tr. 395). Consequently, it is unclear why Plaintiff argues the ALJ's RFC determination, which also limited Plaintiff to a reduced range of light work, failed to account for the limitations assessed by Dr. Carpenter. Because Dr. Carpenter found Plaintiff was able to perform light and sedentary physical activity despite the limitations assessed in his range of motion, Dr. Carpenter's opinion supports the RFC determinations of Dr. Guttman and the ALJ, which both limited Plaintiff to a reduced range of light work.

The Court next considers the findings of Dr. Dehgan in his examinations conducted in January and April of 2010. The ALJ acknowledged these examinations and summarized the findings in his decision. (Tr. 19, 20). Specifically, the ALJ observed Dr. Dehgan's initial examination in January of 2010 revealed normal alignment in Plaintiff's cervical and thoracic spine with no deformities in those areas. (Tr. 19). Additionally, the ALJ noted Plaintiff exhibited a normal range of motion in his shoulders and cervical spine, but showed tenderness and guarding in his lumbar spine. Id. The ALJ further noted examination of Plaintiff's lumbar spine revealed 60 degrees of flexion, 20 degrees of extension, and 20 degrees of lateral bending in his lumbar spine. Id. With respect to Plaintiff's second appointment in April of 2010, the ALJ again observed Plaintiff's shoulders and cervical

---

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

spine were normal, but Plaintiff continued to show tenderness in his lumbar spine with 70 degrees of flexion. (Tr. 492). Finally, the ALJ noted Dr. Dehgan's indication that Plaintiff tested negative for any drugs during the April examination and did not appear to have taken the OxyContin prescribed to him for pain management. Id.

Dr. Dehgan's findings do not appear to be inconsistent with either the RFC assessments of Dr. Guttman or the ALJ. Dr. Dehgan reported Plaintiff exhibited a normal range of motion in his shoulders and cervical spine. Notably, in Dr. Dehgan's April examination, the only indication of a deficit in Plaintiff's range of motion is the statement that he showed 70 degrees of flexion in his lumbar spine. (Tr. 492). As the ALJ noted, Dr. Dehgan's evaluation also suggested Plaintiff had not taken the OxyContin prescribed to him for pain management, and an MRI revealed only mild degenerative changes in his lumbar region. (Tr. 20, 493). Again, Plaintiff does not explain why the reduced ranges of light work identified by Dr. Guttman or the ALJ failed to accommodate these findings. See Hames v. Astrue, No. 12-cv-197, 2012 WL 5426299, at *2 (N.D. Ala. Nov. 6, 2012) (finding a medical source's clinical examination findings which indicated a restricted range of motion in the claimant's lumbar region with a full range of motion in all other joints was consistent with an ability to perform light work). Accordingly, the Court finds Dr. Dehgan's opinions are not inconsistent with the RFC determinations of Dr. Guttman or the ALJ.

Finally, Plaintiff directs the Court to the examination conducted on May 13, 2009 by Dr. Cory. Plaintiff argues this examination revealed limitations in Plaintiff's range of motion along with additional postural and manipulative restrictions. Specifically, Plaintiff notes the evaluation indicated Plaintiff would benefit from physical therapy aimed at squatting, kneeling, bending, stooping, lifting, stair climbing, sitting, standing, walking, overhead

18

activities, self care, and home care.  (Doc. 17, p. 12).  Notably, both the ALJ and Dr. Guttman assessed postural and manipulative limitations in their RFC findings.  (Tr. 15-16, 402).  Specifically, Dr. Guttman limited Plaintiff to no more than frequent balancing, stooping, kneeling, crouching, and crawling.  (Tr. 402).  Again, the ALJ imposed more significant limitations by restricting Plaintiff to no more than occasional bending, stooping, crouching, and kneeling.  (Tr. 15-16).  Nonetheless, Plaintiff contends the ALJ failed to assess limitations in squatting.  (Doc. 17, pp. 12-13).  The Court believes such a limitation was rendered unnecessary by the restrictions assessed in bending, stooping, crouching, and kneeling[4] however, as the Court is remanding this matter, it will direct the ALJ to consider whether Plaintiff needs a limitation in his ability to squat.

Plaintiff also suggests Dr. Cory's notations are inconsistent with the ALJ's finding that Plaintiff experienced only mild limitations in activities of daily living.  (Doc. 17, p. 13).  However, the ALJ's finding was an application of the PRTF analysis required by 20 C.F.R. § 416.920a(c).  Because this finding addressed only the severity of Plaintiff's mental limitations, it was not inconsistent with Dr. Cory's notations regarding Plaintiff's physical restrictions.

For the foregoing reasons, the Court finds the medical evidence cited by Plaintiff is not inconsistent with the RFC assessments of either Dr. Guttman or the ALJ.  Plaintiff's only point of contention with this evidence concerns the findings regarding Plaintiff's range

---

[4] "Stooping, kneeling, crouching, and crawling are progressively more strenuous forms of bending parts of the body, with crawling as a form of locomotion involving bending.  Some stooping (bending the body downward and forward by bending the spine at the waist) is required to do almost any kind of work, particularly when objects below the waist are involved. If a person can stoop occasionally (from very little up to one-third of the time) in order to lift objects, the sedentary and light occupational base is virtually intact."  SSR 85-15, 1985 WL 56857 at *7 (S.S.A. 1985).

of motion with postural and manipulative restrictions. However, Plaintiff does not articulate how the limitations assessed in the ALJ's decision failed to accommodate these findings. To the extent Plaintiff's objection is based on the ALJ's failure to assess limitations in terms of flexion and extension, the Court notes an ALJ need not approach such a degree of medical specificity in determining a claimant's RFC. Rather, the ALJ is required to identify the vocational restrictions imposed by the claimant's medical impairments and determine whether the claimant is able to perform any work despite these restrictions. In the instant case, the ALJ found Plaintiff was able to perform the duties of a reduced range of light work. Plaintiff has not directed the Court to any evidence identifying a need for vocational limitations in addition to those assessed by the ALJ. To the contrary, the only evidence cited by the Plaintiff which explicitly assessed vocational restrictions found Plaintiff was able to perform light and sedentary physical activity. While the other evidence cited by Plaintiff did not impose limitations in vocational terms, their findings are not inconsistent with those of Dr. Guttman or the ALJ. Accordingly, the Court finds the ALJ did not err in giving significant weight to the opinions of non-examining state agency consultant Dr. Guttman. Similarly, the ALJ's failure to state the weight accorded to the opinions of Drs. Carpenter, Dehgan, and Cory amounts to no more than harmless error. See Wright v. Barnhart, 153 F. App'x 678, 684 (11th Cir. 2005) (stating "[a]lthough the ALJ did not explicitly state what weight he afforded the opinions of [four medical sources], none of their opinions directly contradicted the ALJ's findings, and, therefore, any error regarding their opinions is harmless.").

Plaintiff also argues the ALJ erred in failing to assign weight to Dr. Frick's psychiatric evaluation and failed to account for the severity of Plaintiff's mental impairments. (Doc. 17, p. 11-12). Specifically, Plaintiff contends the ALJ erred in failing to

state the weight accorded to Dr. Frick's GAF score assessment of 50. However, "[r]eliance upon a GAF score is of questionable value in determining an individual's mental functional capacity." Gasaway v. Astrue, 8:06-cv-1869, 2008 WL 585113 (M.D. Fla. Mar. 3, 2008) (citing DeBoard v. Comm'r of Soc. Sec., 211 F. App'x 411, 415-16 (6th Cir. 2006)). The Eleventh Circuit has noted "the Commissioner has declined to endorse GAF scores for use in the disability programs and indicated that GAF scores have 'no direct correlation to the severity of requirements of mental disorders listings.'" Wind v. Barnhart, 133 F. App'x 684, 692 n.5 (11th Cir. 2005); 65 Fed.Reg. 50746, 50764–65 (Aug. 21, 2000).

Absent unusual circumstances, courts have generally declined to find reversible error where an ALJ failed to discuss a claimant's GAF scores or indicate the weight accorded to them. See Bailey v. Astrue, 3:09-cv-383, 2010 WL 3220302 (M.D. Fla. Aug. 13, 2010) (finding the ALJ's failure to mention Plaintiff's GAF scores did not require remand); Bruner v. Comm'r of Soc. Sec., 8:08-cv-1744, 2009 WL 3052291 (M.D. Fla. Sept. 23, 2009) (finding an ALJ's failure to mention the claimant's assessed GAF score of 50 did not show that the ALJ failed to consider Plaintiff's entire medical condition and did not require reversal); Jones v. Astrue, 494 F. Supp. 2d 1284, 1288 (N.D. Ala. 2007) (stating "[t]he courts generally find that a GAF score of 50 or below is not in and of itself determinative of disability."); Smith v. Comm'r of Soc. Sec., 6:10-cv-1478, 2011 WL 6217110 (M.D. Fla. Nov. 1, 2011) report and recommendation adopted, 6:10-cv-1478, 2011 WL 6217124 (M.D. Fla. Dec. 14, 2011), aff'd, 486 F. App'x 874 (11th Cir. 2012) (stating "[b]ecause the ALJ indicated that he carefully reviewed the records before him, and there is no indication that he overlooked or misconstrued any GAF score, I recommend that the Court find that the ALJ did not err by failing to include the GAF scores in his decision or by

failing to state the weight he gave to each score.").

In this case, the ALJ acknowledged Dr. Frick's findings, including the GAF score assessment of 50, and there is no indication that the ALJ misinterpreted the score in rendering his decision. Accordingly, consistent with the many cases cited, this Court finds no reversible error in the ALJ's failure to state the weight accorded to Dr. Frick's GAF score assessment of 50.

## IV. CONCLUSION

For the foregoing reasons, it is **RECOMMENDED** the final decision of the Commissioner be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the ALJ should be instructed to reconsider Plaintiff's testimony regarding his pain and subjective complaints and articulate reasons for accepting or rejecting his testimony. Additionally, the ALJ may conduct any proceedings deemed necessary.

The undersigned further recommends that should this remand result in the award of benefits, Plaintiff's attorney be granted, pursuant to Rule 54(d)(2)(B), an extension of time in which to file a petition for authorization of attorney's fees under 42 U.S.C. § 406(b), until thirty (30) days subsequent to the receipt of a notice of award of benefits from the Social Security Administration.

**DONE AND ENTERED** at Jacksonville, Florida, this __29th__ day of October, 2013.

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

The Honorable Marcia M. Howard,
United States District Judge

Counsel of Record